**PATRICK J BRACKLEY**
**AT LAW**

The Woolworth Building
233 Broadway, Suite 2370, New York NY10279
Tel:(212)334-3636
Fax:(212)513-7086
Patrickbrackley@aol.com

May 9, 2015

**COURTESY COPY**

The Honorable Kimba M. Wood, U.S.D.J.
United States District Court
40 Foley Square
New York, N.Y. 10007

Re:   U.S. v. Juan Cespedes-Pena
        Dkt. # 14 Cr. 520 (KMW)

Dear Judge Wood:

I write to ask that The Court reconsider its decision not to charge the jury on the defense of duress.

To establish the defense of duress, a defendant must demonstrate that, " at the time the conduct occurred, the defendant was subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which there was no reasonable opportunity to escape other than by engaging in the otherwise unlawful activity. United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d Cir.1990) (quoting United States v. Mitchell, 725 F.2d 832, 837 (2d Cir.1983).

The Court's May 8 Order, which states that it "has concluded that the Defendant's duress defense fails as a matter of law, because no reasonable jury could find that he lacked a reasonable opportunity to escape by contacting law enforcement officials," Order at 1, makes apparent that it is the third element of the defense on which The Court focused.

In that regard, it is Defendant's intent to argue to the jury that, up to the point on June 3d that the undercover's conversation aroused his suspicions, Defendant believed that he was doing no more than delivering money in payment of a lawful debt, which was not a crime. When his suspicions were aroused, Defendant made clear to the undercover that he had no intent to involve himself in whatever was transpiring and refused to hand over the $16,000 that would have repaid the debt. Defendant then left.

Later on the evening of June 3d, Tony called Defendant and Defendant expressed to Tony his confusion concerning the undercover's conversation and his discomfort with whatever Tony was involving him in. In response, Tony told Defendant that Defendant would not have to interact with the undercover again. Instead, Tony told Defendant, Tony would have additional money delivered to Defendant. Tony instructed Defendant to deliver

that money, as well as the $16,000 debt repayment, not to the undercover but rather to a third party then completely unknown the Defendant.

I intend to further argue that, at this point, Defendant believed that, having been relieved from his role as Tony's point man with whatever was going on with the undercover; he had successfully extricated himself from any drug deal.  To be sure, however, in the belief that, by extinguishing the debt, he would be done with whatever was going on, Defendant asked Tony if he could just give the $16,000 directly to Tony.  Tony rejected Defendant's request and threatened that, if Defendant didn't accept delivery of the new money and pass that money and the $16,000 on to a third party then unknown to Defendant, then Defendant's family would come to serious harm.

Pursuant to those threats, Defendant received the additional money that June 3d evening.  Believing that the recipient of the money, LaPaz, was, in essence, a cutout between himself and the drug-dealing undercover, Defendant still believed that he had removed himself from the drug deal.  To be sure, however, in order to further dissociate himself from any crime, when he delivered the new money to LaPaz the next afternoon, he withheld the $16,000 debt repayment.

I believe that I should be able to argue to the jury that the reason Defendant never contacted the authorities was that, once he had been relieved of having to interact with the undercover, Defendant no longer feared inculpation in the charged conduct.  While he was coerced into accepting the additional money and delivering it to LaPaz, Defendant still had no intent to involve himself in a drug deal.  Defendant had achieved no meeting of the minds with Tony or, because he had no idea who he was or what his purposes was, LaPaz.  While his family had surely been threatened, because Defendant intended to do as Tony bid, albeit without the requisite intent to import or distribute narcotics, Defendant had no reason to believe that Tony would act on his threats, and thus no reason to contact the authorities.

I state this most respectfully but, by ruling as a matter of law that Defendant cannot establish the third element of the duress defense, I believe that the Court is essentially deciding that it was unreasonable for Defendant to believe that he was no longer involved in a drug deal when he accepted the additional money and delivered it to LaPaz.  I believe that, in issuing such a ruling, The Court is essentially rejecting Defendant's lack of intent defense and invading the province of the jury.  The defense made the same lack of intent argument at the first trial and the jury could not reach a verdict so I would hope that The Court would agree that that defense is not implausible.

Should The Court decide to adhere to its May 8, Order, I expect I will argue that it should exercise its discretion to permit the defense to reopen its case to (1) introduce the missing testimony from the Defendant and (2) ask that The Court take judicial notice of the corruption endemic to Dominican law enforcement, as it did *sua sponte* at the proffer.  If The Court heard the evidence it needed to hear as to the third element at Defendant's "duress" proffer, it would appear that it can only be my fault that that same evidence was not presented at the trial.   Should the Defendant be convicted, that conviction would appear to be vulnerable to attack on ineffective assistance grounds.  In the interest of judicial economy, I would thus suggest that the better path would be to permit me to address the oversight now.

For the forgoing reasons, Mr. Cespedes-Pena respectfully requests that the Court reconsider its Order and either charge the jury on the duress defense on the current record or.

       Respectfully submitted,

       <u>s/ Patrick J. Brackley</u>
       Patrick J. Brackley (PJB 6808)

cc: AUSA  Jared Lenow (via e-mail/fax)

Under Rule 201, "[a] court may take judicial notice, whether requested or not" of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)-(c); see also Black's Law Dictionary 923 (9th ed.2009) (defining judicial notice as "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact"). More generally, the "traditional textbook treatment" of Rule 201 has included two categories for judicial notice: "matters of common knowledge" and "facts capable of verification." Fed.R.Evid. 201, Advisory Committee Notes, Note to Subdivision (b).

US v Bari, 599 F.3d 176, 180